Good morning, Your Honour. May it please the Court, my name is Daniel Fong, representing the Petitioner. Your Honour, I would like to reserve time for rebuttal. Your Honour, in this case, the IJ denied my client's claims based on the alleged inconsistency between his oral testimony and the sworn statement taken while my client was in custody. However, my client was never given an opportunity to explain the alleged inconsistency. The IJ did not ask him any questions pertaining to the sworn statement, nor did the Government Council cross-examine my client's with respect to the sworn statement. Your Honour, the Government argued in its brief that the sworn statement was impeaching evidence. However, the Government never used the sworn statement to impeach my client. The BIA was wrong when it said that my client only offers speculative explanation for the alleged inconsistency when given an opportunity to explain by the IJ. While it is true that the IJ, toward the end of the hearing, asked my client's counsel to explain the sworn statement, the question was directed to my client's counsel, not to my client. And my counsel's argument is not evidence. Therefore, the answer from Mr Chen's counsel is no substitute for my client's testimony. Your Honour, the IJ has the responsibility to fully develop the record by asking my client to explain the alleged inconsistencies. However, the IJ failed to do so in this case. And time and again, this Court reminded IJs and the BIA that a petitioner must be provided with a reasonable opportunity to offer an explanation of any perceived inconsistency that forms the basis of denial. In this case, the IJ did not give my client an opportunity. Are you saying that at the hearing, there was no mention during the hearing of the fact that the statement was completely different than what he testified to? Yes. The IJ asked the petitioner's counsel to explain the differences between the sworn statement and the oral testimony. And the counsel gave his explanation. The problem was they didn't ask the counsel, but they didn't ask the petitioner. That's the problem. Correct. Correct. Because a counsel statement is not evidence, Your Honour. And also, not only must a petitioner be given an opportunity to explain, the IJ must also consider and address the applicant's explanation for the identified discrepancy. In this case, the IJ failed to address the reasonable explanation provided by my client's counsel and simply dismissed them as... Was the question of whether there was an opportunity for Chen, as opposed to the client, to explain the question raised before the BIA? No. Exhausted. No. How are we supposed to reach him? But my client, the counsel, did argue that the IJ made a mistake in finding my client not credible. Okay. But it didn't argue that giving the counsel, but not the client, the opportunity to explain the discrepancy was a problem? No, Your Honour. Okay. But I believe that... Right, but... Is there any case law on it? Is there any case law on that question? I.e., if you ask the lawyer, you know, what about this discrepancy, but you don't ask the client whether that's a problem? Yes, because... Yes, because a counsel explanation is not evidence. Well, I understand you're saying that. I'm asking is there any case law on it? I believe that is just a general law, so I am not aware of any specific case on this issue, Your Honour. When the IJ asked counsel to explain the discrepancy between the prior statement and his testimony, could counsel at that point have asked to reopen or proffered additional testimony by the petitioner? No. Was there anything that prevented counsel from taking advantage of that question to then say, I'd like my client to explain that to the IJ? Because the IJ did not give my client's counsel an opportunity to further question my client. He only asked my client, counsel, to explain the differences between the statement and the oral testimony. And if there was a good explanation, could counsel then have asked the IJ to put his client back on the stand or back under oath and give that explanation to the IJ so that the record could be more fully developed? Well, I believe it's up to the IJ to... If the IJ finds that it's necessary, he could have asked the counsel to question... Well, my question is, but if counsel thought it was necessary, was there anything preventing counsel from recalling his client and proffering the petitioner's explanation as to why there was discrepancy? Because the IJ did not give my client's counsel permission to further question my client. I don't believe there was any opportunity for my client, counsel, to recall my client to give further testimony. And also in this case, it doesn't appear that there is any cross-examination of my client by the government counsel. So my client, counsel, did not have an opportunity to redirect following the cross-examination, Your Honor. Did you raise this question in your brief here? Your Honor, I did not. I wasn't the one who wrote the brief. Well, that doesn't help. Was it raised in the brief? No. So it wasn't raised in the brief and it wasn't raised to the BIA. No, Your Honor. But I believe that in the interest of justice, the courts can consider this question because it is a question of due process and fundamental fairness. And also, the government argued in its brief that this one statement was a reliable statement. However, time and again, the courts said that it hesitated to view statements given during the airport interview as valuable impeaching sources because of the condition under which they were taken and because the newly arriving alien cannot be expected to divulge every detail of the persecution he or she sustained. So in this case, the officer who conducted the interview did not ask the right question. Had the officer asked my client, do you have a problem with the Chinese government, my client would have answered yes. Didn't he say something along those lines? Have you ever had any problem with police and or other governmental authorities in China? And the answer was no. Your Honor, I believe that the officer asked, does your concern have anything to do with membership to any political or religious affiliation such as anti-government groups, underground church or Falun Gong? And my client answered no. That was one question, but there was another question. Okay. The following question was regarding any problem with police and or other governmental authorities in China, to which he answered no. Mm-hmm. And also, yes. What about the cat claim? Do you have anything to say about that in your last minute? Your Honor, what? The cat claim, do you have anything, any argument to make about that? The Convention Against Torture claim. No, Your Honor. Okay. Do you want to reserve time? You'll have about a minute left if you reserve time now. Yes, Your Honor. Thank you. Good morning again, Your Honor. It's Fred Sheffield on behalf of the Attorney General. May it please the Court. We're asking that you deny this petition for review because the record fully supports the determination by the agency that the petitioner was not credible. I would just like to note by beginning, I guess, reiterating that the arguments presented to the Board and the arguments presented to the Court in the briefs were based on the notion that, one, Mr. Chen's statements were not, in fact, inconsistent. And two, if they were inconsistent, they were adequately explained. Now today, it sounds like there's some new arguments being presented about whether a petitioner was being given an opportunity to explain. We would argue that these positions have not been exhausted. They have not been briefed to this Court. And the Court should not reach them for that reason. When we look at the arguments that the petitioner did raise in both his brief to the Board and his brief to the Court, i.e., that his statements were not inconsistent, I don't think we see a lot of merit. The notion that he was not inconsistent simply because he was not pointedly asked about China's family planning policy is pretty weak in light of the numerous times that the petitioner was asked, what were the reasons that you left China? And he says, first on page 160, I wanted to make money for my family. He was asked how he obtained, this is again on page 160 of the record, he was asked how he obtained a passport. And he goes into detail describing the local channels that he used to obtain a passport. Later in his testimony then, he claimed that he was in hiding from the government for three years before he left China. So that is inconsistent. Then again on page 161, he states, for what purpose did you go to Mexico, is the question. I wanted to work in Mexico. And then the question that Your Honors alluded to, have you had any problem with the police or any governmental authorities in China? That's on page 162. And he responds, no. So I don't think there is a whole lot of merit to the notion that these statements aren't fundamentally inconsistent. And certainly inconsistent at least in a manner that could be supported under the Real ID Act. We would also argue that arguably the challenge to the adverse credibility determination is even waived in this case because the arguments that were raised in Petitioner's Brief all related to pre-Real ID Act cases where even minor inconsistencies could support an adverse credibility decision. As to Petitioner's request that the court consider his arguments, notwithstanding the fact that they weren't raised in briefs, we would point out an entry on the docket from January 26, 2010, wherein the court requested that Petitioner inform the court in writing whether he wishes to rely on the previously filed briefs or whether to substitute briefs. The absence of a response will be considered as a joinder to the previously submitted briefs. And I don't see any subsequent entry on the docket requesting a further briefing from Petitioner. You said originally that there was an argument in the Petitioner's Brief that the explanation given, presumably explanation from the lawyer, should have been considered adequate. I don't see that argument. Was that argument made? Well, yeah, I think I'm... If I can point... If it was made, it wasn't dealt with by the BIA or the IJ? It was dealt with by the BIA. The board, on page 3 of the record, the board said the respondent only offered speculative explanations for these inconsistencies when given the opportunity to explain by the immigration judge. That's right in the middle of the page, on page 3, towards the end of the first paragraph. Why are they speculative? I mean, they may be speculative in the sense that the client himself didn't say it, but what else about them is speculative? Well, the explanation was that an individual with this level of education may not have felt comfortable talking to government authorities. I think that's the part that's speculative. Somebody said he was scared and someone that's not speculative. Right. And the immigration judge made the same determination. The immigration judge... I know this is a technical problem, but it appears that there was no consideration of the evidence of country conditions in denying the CAD claim, and I thought our case law says there has to be such consideration. Well, I think we can. I mean, the immigration judge relied mainly on the inconsistency in denying the CAD claim. The immigration judge dealing with the CAD claim is on page 106. But for a CAD claim, he doesn't have to have had any adverse dealings with the police, right? Right. But by the same token, he does need to present evidence that he would be tortured. And in this case, even assuming his credibility, he claims that he was detained for one day. I don't think there's... He's never asserted, whether in his testimony or in his briefs, that he's ever experienced anything remotely resembling torture. Aguilar Ramos says that the failure of the IJBA to consider evidence of country conditions as reversible error with regards to CAD, even if the IJ correctly concluded that its testimony by itself was insufficient to meet its burden under CAD, the conclusion is not dispositive because a CAD applicant may satisfy his burden with evidence of country conditions alone. So a negative credibility finding doesn't preclude relief, etc. Right. I mean, I think... But I don't know that there's any showing that the government did not consider country conditions. Not the government. The IJ and the BIA. Right. The IJ and the BIA did not consider country conditions. I mean, had there been country conditions evidence that was salient to this case presented and that was somehow not dealt with by the immigration judge or the board, then I think we may have a problem. But there really wasn't any country conditions evidence that was... Well, that's my main question. Was there country conditions evidence in the record? No. Nothing that would point to the fact that this petitioner would be tortured. Was there country conditions evidence in general in the record? Yeah. I believe the country report was in the record. How do we know on this record that the country conditions were considered? Was there any indication anywhere in the record that it was considered? Well, I think if something is submitted to the record, I mean, we can generally expect that the immigration judge is going to be considering it and rendering his decision... They gave a bunch of reasons, actually, and none of them were the country conditions. Correct. So the IJ went over the evidentiary record and explained what it contained. Did that include the country report? The IJ did not make an explicit mention of the country report. But I don't know that the case law... I know that CAT claims need to be considered distinctly from asylum and withholding claims, even where adverse credibility is at issue. But I don't know that there's an explicit requirement that the immigration judge needs to make a note of what country conditions evidence... Was that raised by Petitioner, that issue? No. Again, none of these are issues that have been properly presented to either the agency or... Wasn't raised where? Wasn't raised in the briefs? Wasn't raised in the briefs, and I don't believe it was raised in the court. It was raised to this court. Was it raised to the BIA? No. I don't even... I don't see any mention of CAT whatsoever in the brief to the BIA. But the BIA did decide it. The BIA did decide it, but again... Isn't that usually the end of the story? I'm sorry? Isn't that usually the end of the exhaustion story? Sure, but in terms of what country conditions evidence does the board need to consider, I mean, it would be... I think there's... The burden of proof, after all, here is on the applicant. So if there are country... I think the cases where we run into trouble with not considering country conditions evidence is if it comes up in briefs, if it comes up in arguments that this is salient country conditions evidence towards my case, and the board simply makes no mention of it. Where we have a situation like this, where the petitioner is not presenting country conditions evidence and really hasn't made any claim that based on country conditions in China, he would likely be tortured, I don't know that there's an explicit requirement that the immigration judge and the board engage in a pro forma sentence. In the briefs in this court, there's, as far as I can tell, a passing reference at the end and nowhere else, I think. The brief to... This court. Yeah, there's a passing reference, but it doesn't appear anywhere in the brief to the board. So the question would then be, which country conditions evidence is the board ignoring given that no country conditions evidence or even any mention of cat was ever discussed to the board. Okay, thank you very much. Thank you, Your Honor. Thank you for your time. Sir, you have one minute. Your Honor, my client did raise the issue of cat in the brief to the BIA and also in the brief to the Ninth Circuit Court. As far as I can tell, in the brief to the Ninth Circuit Court, it's the very last sentence, is that right? Is there anything else? Well, it is on page 23. It says that the immigration judge committed error in determining that petitioner was statutory in error eligible for benefit under the Convention Against Torture. It's on page 23 of the brief. Yes, I do see that. Yeah. And also, the issue was also raised in the brief to the BIA. On page 9 of the brief, the administrative record, page 44, my client's counsel argues that respondent qualified for deferral of removal under the Convention Against Torture because of the torture inflicted by the Chinese government. And also, my client in the hearing testified that he wants to have more children in China. If he has more children in China, then he believed that he would suffer forced sterilization, and forced sterilization constitutes torture under the Convention Against Torture, Your Honor. Is there a case that says that? I saw some reference to that as being persecution, but I didn't see a case that said it was torture. Do you have a cite for me? No, Your Honor, but the Convention Against the definition of torture is infliction of great physical pain. And I believe that forced sterilization falls into this category. It falls under the definition of torture, Your Honor. And also, there is no fundamental inconsistency between my client's oral testimony and the sworn statement because the sworn statement does not deny that my client suffered persecution in China. It does not deny that he was a victim of China's one-child policy. And due to my client's limited education, he did not understand fully the question posed by the officer. And also, because of the circumstances, it wasn't conducive for him to disclose the full story. So there is no fundamental inconsistency between the oral testimony and the sworn statement. And the court rightly said in previous cases that a newly-arrival alien cannot be expected to divulge every single detail of the persecution, Your Honor. Okay, thank you very much. Thank you very much.
judges: Berzon, Ikuta, Nguyen